Hillsborough-southern judicial district
No. 2003-701

YVONNE MARIKAR

v.

PEERLESS INSURANCE COMPANY

Argued: July 14, 2004
Opinion Issued: September 1, 2004

*Haytayan & Haytayan,* of Hudson (*Harry M. Haytayan, Jr.* on the brief and orally), for the petitioner.

*Devine, Millimet & Branch, P.A.*, of Manchester (*John P. Sherman* and *Danielle L. Pacik* on the brief, and *Mr. Sherman* orally), for the respondent.

NADEAU, J. The petitioner, Yvonne Marikar, appeals an order of the Superior Court (*Hampsey*, J.) granting the motion for summary judgment of the respondent, Peerless Insurance Company. We affirm in part, reverse in part and remand.

The relevant facts follow. The petitioner owns and operates the Nashua Montessori School (school). Between March 1998 and May 2000, David Brackett, the son of Sean and Kimberly Brackett, attended the school. In June 2002, the Bracketts sued the petitioner alleging three claims: negligence (count I); assault and battery (count II); and breach of contract (count III). In the introduction to the writ, the Bracketts alleged, among other things, that the petitioner engaged in "corporal punishment, ridicule, verbal abuse, deprivation of lunches as punishment, and other forms of discipline in child care that was inappropriate" against the Bracketts' son. In the negligence claim, the Bracketts alleged that "the Defendant wantonly and oppressively engaged in the conduct outlined in the introduction which is incorporated herein by reference as if stated verbatim."

Since at least 1998, the petitioner had a commercial general liability insurance policy with the respondent. Under the policy, the respondent is responsible for "pay[ing] those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury'" to which the insurance applies.

After the underlying case was filed, the petitioner filed a petition in superior court seeking a declaratory judgment that the respondent had a duty to "defend her and hold her harmless" pursuant to its obligations under the policy. The respondent filed a motion for summary judgment arguing that the policy was not triggered because there was no "occurrence." The petitioner objected and filed a cross-motion for summary judgment.

The court denied the petitioner's motion and granted the respondent's motion for summary judgment, finding that there was no "occurrence" triggering the policy in this case. It also found that "the acts remain outside the definition of an accident because the petitioner's acts were inherently injurious." In doing so, it noted that "[c]orporal punishment or physical discipline has an obvious physical component and cannot be performed without certainty that some injury will result." The court concluded that because all three claims in the underlying case arose out of

intentional acts of discipline, there had been no occurrence, and thus the policy was not triggered.

On appeal, the petitioner argues that the trial court improperly granted summary judgment because whether the petitioner's conduct was intentional is a material fact in dispute. In doing so, she contends that there was no evidence to establish that her actions were intentional or inherently injurious as a matter of law. The respondent argues that there is no genuine issue of material fact and the petitioner's actions are inherently injurious, and thus it had no duty to defend or indemnify her. Finally, the respondent contends that the order should be affirmed "because the policy contains several endorsements that exclude claims arising out of abuse or molestation and corporal punishment."

In reviewing the trial court's grant of summary judgment, we consider the affidavits and other evidence, and all inferences properly drawn from them, in the light most favorable to the non-moving party. *Peerless Ins. v. Vermont Mut. Ins. Co.*, 151 N.H. 71, 72, (2004). If there is no genuine issue of material fact, and if the moving party is entitled to judgment as a matter of law, the grant of summary judgment is proper. *Id.* We review the trial court's application of the law to the facts *de novo. Id.*

In New Hampshire, "an insurer's obligation to defend its insured is determined by whether the cause of action against the insured alleges sufficient facts in the pleadings to bring it within the express terms of the policy." *Martin v. Me. Mut. Fire Ins. Co.*, 145 N.H. 498, 500 (2000) (quotation omitted). Thus, our analysis begins with an examination of the insurance policy language. *Pro Con Constr. v. Acadia Ins. Co.*, 147 N.H. 470, 472 (2002). The interpretation of insurance policy language, like any contract language, is ultimately an issue of law for this court to decide. *Id.* We look to the plain and ordinary meaning of the policy's words in context. *Id.* Policy terms are construed objectively, and where the terms of a policy are clear and unambiguous, we accord the language its natural and ordinary meaning. *Peerless Ins.*, 151 N.H. at 72. Where an insurance policy's language is ambiguous, however, and one reasonable interpretation favors coverage, we construe the policy in the insured's favor, and against the insurer. *EnergyNorth Natural Gas v. Continental Ins. Co.*, 146 N.H. 156, 159 (2001).

First, we note that the petitioner did not argue to the superior court or on appeal that the policy covers the intentional conduct alleged in counts II and III of the underlying case. Therefore, the only issue for us to decide is whether the policy covers the acts alleged in count I, the negligence claim.

The policy covers an "[o]ccurrence," which is defined as "an accident, including continuous or repeated exposure to substantially the same

general harmful conditions." The policy, however, excludes, "'[b]odily injury' or 'property damage' expected or intended from the standpoint of the insured." While the policy defines "occurrence" to include an "accident," it does not define the term "accident." "Accident" is reasonably understood to mean, "an undesigned contingency, ... a happening by chance, something out of the usual course of things, unusual, fortuitous, not anticipated, and not naturally to be expected." *Vermont Mut. Ins. Co. v. Malcolm*, 128 N.H. 521, 523 (1986) (quotation omitted).

We have "developed two inquiries to determine whether an insured's act was an accidental cause of injury, one subjective, the other objective." *EnergyNorth*, 146 N.H. at 162. First, an insured's act is not an accidental contributing cause of injury when the insured actually intended to cause the injury that results. *Vermont Mutual*, 128 N.H. at 523. This inquiry is subjective, analyzing the actual intent of the insured. *EnergyNorth*, 146 N.H. at 162. The objective test is conducted from the standpoint of a reasonable person in the position of the insured. *Id.* We have held that an insured's intentional act cannot be accidental when it is so inherently injurious that it cannot be performed without a certainty that some injury will result. *Id.*

In this case, the Bracketts alleged in the negligence claim, among other things, that the petitioner engaged in a pattern of verbal abuse. Because the objective test set forth in *Vermont Mutual*—whether the alleged verbal abuse constitutes conduct that is "inherently injurious" as a matter of law—is dispositive in this case, we confine our review to that prong.

"[A]n act is inherently injurious if it is *certain* to result in *some* injury, although not necessarily the particular alleged injury." *Providence Mut. Fire Ins. Co. v. Scanlon*, 138 N.H. 301, 306 (1994) (first emphasis added). We have applied this test to various circumstances. For instance, in *Vermont Mutual*, we held that sexual assaults committed upon an eleven-year-old boy were "inherently injurious in the most obvious sense that they could not be performed upon a boy without appalling effects on his mind as well as forbidden contacts with his body." *Vermont Mutual*, 128 N.H. at 524. In *Green Mountain Insurance Co. v. Foreman*, 138 N.H. 440, 442 (1994), we held that an intentional punch to the face is inherently injurious. Finally, in *Martin*, we upheld the trial court's determination that the act of violently striking the back of the victim's head, grabbing his neck, and choking him was inherently injurious. *Martin*, 145 N.H. at 501.

In contrast, in *Scanlon*, the insured party's son, a sixteen-year old, played a "game" with several other younger boys, which involved shooting BB guns at targets as well as each other. *Scanlon*, 138 N.H. at 302. At one point, the son fired the gun in the direction of one of the boys, striking him

in the eye. *Id.* We concluded that because numerous shots had been fired without a resulting injury before the final shot, it was not certain that the final shot would result in injury. *Id.* at 306. Therefore, we held that these acts were not inherently injurious. *Id.*

█ In the instant case, we find that verbal abuse is not certain to result in some injury. Accordingly, unlike a sexual assault, a punch to the face, or a blow to the head combined with a chokehold, verbal abuse, although unpleasant and often demeaning, is not inherently injurious. Thus, we reverse the trial court's grant of summary judgment as to that portion of the order. We also disagree with the trial court that all acts involving some physical discipline, such as making the child stand in a corner, are inherently injurious and to the extent such acts are alleged in count I, we also reverse that portion of the order.

We need not address the respondent's argument concerning the endorsements that exclude claims of corporal punishment, because the petitioner concedes that any acts involving corporal punishment are not covered by the policy. Finally, because the petitioner did not argue to the superior court or on appeal that the policy covers the conduct alleged in counts II and III of the underlying case, we affirm the trial court's order as to those counts.

*Affirmed in part; reversed in part; and remanded.*

BRODERICK, C.J., and DALIANIS, J., concurred.