Rockingham
No. 2004-814

DONNA BANFIELD, INDIVIDUALLY AND AS MOTHER AND NEXT FRIEND OF
DAVID BANFIELD, JR.

v.

ALLSTATE INSURANCE COMPANY

Argued: May 10, 2005
Opinion Issued: July 29, 2005

*Getman, Stacey, Schulthess & Steere, P.A.*, of Bedford (*John P. Fagan* on the brief and orally), for the petitioner.

*Bouchard, Kleinman & Wright, P.A.*, of Manchester (*Nicholas D. Wright* on the brief and orally), for the respondent.

BRODERICK, C.J. The petitioner, Donna Banfield, individually and as mother and next friend of her son, David Banfield, Jr., appeals a decision of the Superior Court (*Morrill*, J.) granting respondent Allstate Insurance Company's (Allstate) motion for summary judgment and denying her cross-motion. We affirm.

The relevant facts are undisputed. On April 15, 2001, David Banfield was a passenger on an all-terrain vehicle (ATV) that his friend, Adam Mecca, was driving on Derryfield Road in Derry. Adam lost control of the ATV, and David was thrown from the vehicle and injured. At the time of the accident, Adam's mother, Rhea Mecca, owned the ATV and had a homeowner's insurance policy issued by Allstate. Allstate denied coverage for David's injuries, and the petitioner brought a declaratory judgment action against Allstate to compel it to provide coverage.

The policy contains the following relevant provisions:

> Subject to the terms, conditions and limitations of this policy, **Allstate** will pay damages which an **insured person** becomes legally obligated to pay because of **bodily injury** or **property damage** arising from an **occurrence** to which this policy applies, and covered by this part of the policy.
>
> . . . .
>
> **We** do not cover **bodily injury** or **property damage** arising out of the . . . use . . . of any motor vehicle . . . . However, this exclusion does not apply to:
>
> . . . .
>
> b) any motor vehicle designed principally for recreational use off public roads, unless that vehicle is owned by an **insured person** and is being used away from an **insured premises**[.]

In addition to the facts recited above, the parties stipulated that: (1) Rhea Mecca was an "insured person" under the policy; (2) the ATV was "designed principally for recreational use off public roads"; (3) the injury to David Banfield constituted an "occurrence" under the policy; (4) the "insured premises" for purposes of the policy was the Mecca residence located at 46 Kendall Pond Road in Derry; and (5) at the time of the accident, the ATV was not being operated on the "insured premises."

In her cross-motion for summary judgment, the petitioner argued that the policy was a "motor vehicle liability policy" and, consequently, that the exclusion quoted above was void under New Hampshire law. After considering the undisputed facts and relevant provisions of the policy, the trial court denied the petitioner's motion for summary judgment and

granted Allstate's, ruling that Allstate was not obligated to provide coverage in connection with the accident:

> The policy in this case is entitled "Allstate Deluxe Plus Homeowners Policy," and its descriptions of coverage clearly show it to be a property insurance policy. Attempting to transform it into a "motor vehicle liability policy" so distorts its purposes and terms that it is inconceivable that a reasonable person in the position of the insured would ever believe that it was a motor vehicle liability policy.

The petitioner unsuccessfully moved for reconsideration, and this appeal followed.

In reviewing the trial court's grant of summary judgment, we consider the affidavits and other evidence, and all inferences properly drawn from them, in the light most favorable to the non-moving party. If there is no genuine issue of material fact, and if the moving party is entitled to judgment as a matter of law, the grant of summary judgment is proper. We review the trial court's application of the law to the facts *de novo*. *Marikar v. Peerless Ins. Co.*, 151 N.H. 395, 397 (2004).

The petitioner contends that "[because] the Allstate policy specifically affords liability coverage for its insured's ATV, the policy must be treated as a motor vehicle liability policy for accidents in which the ATV is directly involved." In support of this contention, she argues that the policy meets the definition of a "motor vehicle liability policy" under RSA 259:61 (Supp. 2004) because the policy "provide[s] liability coverage to its insured for use of a motor vehicle identifiable as covered under the policy." We disagree.

We are the final arbiter of the intent of the legislature as expressed in the words of the statute considered as a whole. We first examine the language of the statute, and, where possible, we ascribe the plain and ordinary meaning to the words used. When the language of a statute is plain and unambiguous, we need not look beyond it for further indication of legislative intent. *Bedford Chapter-Citizens for a Sound Economy v. Sch. Admin. Unit #25*, 151 N.H. 612, 614 (2004).

■ RSA 259:61, I (2004) defines "motor vehicle liability policy," in pertinent part, as:

> [A] policy of liability insurance which provides:
>
> I. Indemnity for or protection to the insured and any person responsible to him for the operation of the insured's motor vehicle ... who has obtained permission or control thereof with his express or implied consent, against loss by reason of the

liability to pay damages to others for ... bodily injuries ... accidentally sustained during the term of said policy by any person other than the insured ... to the amount or limit of at least $25,000 on account of injury to or death of any one person, and subject to such limit as respects injury or death of one person, of at least $50,000 on account of any one accident resulting in injury to or death of more than one person . . . .

Thus, a "motor vehicle liability policy" is defined as a type of "policy" that provides certain protection. The term "policy," however, is not defined in the statute. Accordingly, we construe the term according to its plain and ordinary meaning. *Bedford Chapter-Citizens for a Sound Economy*, 151 N.H. at 614. In the context of insurance, the term "policy" means: "a certificate of insurance : a writing whereby a contract of insurance is made : the document containing the contract made by an insurance company with a person whose property or life is insured : an annuity contract or certificate of an insurance company." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1754 (unabridged ed. 2002). The definition of the term "policy" refers to certificates, writings, contracts and documents, all of which indicate that "policy" refers to an entire contract of insurance, and not just one provision within such a contract. Thus, we must resolve whether Rhea Mecca's policy, as a whole, must be construed as a "motor vehicle liability policy" for purposes of injuries or property damage arising from the insured's use of an ATV under limited circumstances simply because the policy contains a provision that affords liability coverage in those instances.

The interpretation of insurance policy language is a question of law for this court to decide. We construe the language of an insurance policy as would a reasonable person in the position of the insured based on a more than casual reading of the policy as a whole. Policy terms are construed objectively, and where the terms of a policy are clear and unambiguous, we accord the language its natural and ordinary meaning. We need not examine the parties' reasonable expectations of coverage when a policy is clear and unambiguous. *Krigsman v. Progressive N. Ins. Co.*, 151 N.H. 643, 645 (2005).

As recognized by the trial court, the policy is entitled, "Allstate Deluxe Plus Homeowners Policy." Moreover, the petitioner concedes that the relevant provisions of the policy are not ambiguous and do not provide for coverage in this instance; she admits that if coverage exists, it is solely by operation of statute. Consistent with its title as a homeowner's policy and the unambiguous language of the challenged provision, the policy provides coverage for bodily injury and property damage arising from the use of a

narrow class of motor vehicles that are designed principally for recreational use and, when owned by the insured, are used on the insured premises.

In *Davidson v. Motorists Mut. Ins. Co.*, the Ohio Supreme Court considered whether a "homeowner's insurance policy that provides limited liability coverage for vehicles that are not subject to motor vehicle registration and that are not intended to be used on a public highway is . . . a motor vehicle liability policy" subject to the statutory requirement that such policies "offer uninsured and underinsured motorist coverage." *Davidson v. Motorists Mut. Ins. Co.*, 744 N.E.2d 713, 719 (Ohio 2001). Specifically, the insured sought underinsured motorist benefits under his homeowner's insurance policy in connection with an automobile collision that left him seriously injured. *Id.* at 713.

In determining that underinsured benefits were not available because the homeowner's policy was not a "motor vehicle liability policy," the court adopted the reasoning of another court that had addressed a similar issue:

> In this case, however, there is no direct liability coverage, even in a limited sense, for motor vehicles. The policy provision [at issue] specifically excludes coverage for bodily injury arising out of the use of motor vehicles. While the exclusion . . . does not apply to specific conveyances such as recreational off-road conveyances and golf-carts, this incidental coverage is simply not enough to transform a homeowner's policy into an automobile liability policy.
>
> A homeowner's policy such as the policy at issue in this case cannot be reasonably construed to provide uninsured or underinsured motorist coverage where there is no automobile liability coverage intended by the parties or contained within the policy.

*Id.* at 718 (brackets and quotations omitted). "Although the homeowner's policy [in this case] affords limited coverage arising out of the use of certain motorized vehicles, the mere fact that the policy provides coverage for these motorized vehicles does not convert the policy into a motor vehicle liability policy." *Id*; *see U.S. Automobile Assoc. v. Wilkinson*, 132 N.H. 439, 446-49 (1989) (declining to construe umbrella policy as being subject to laws regarding uninsured motorist coverage on basis that purpose of policy was not to insure motor vehicles, but to insure against rare catastrophic liability by providing coverage over and above that provided in business automobile liability policy).

The petitioner attempts to distinguish *Davidson* on the basis that here, she seeks liability protection for the use of a motor vehicle for which

coverage was specifically provided—in limited circumstances—under a homeowner's policy, while in *Davidson*, the claimant sought underinsured motorist coverage for the use of a motor vehicle that was not covered under any circumstances in the homeowner's policy. Consequently, she contends that the issue in *Davidson*, unlike in this case, was whether the claimant "could recover uninsured motorists benefits under a homeowner's insurance policy which by its terms provided no coverage for the insured's use of an automobile." We are not persuaded.

██ The fact that the ATV in this case was subject to limited coverage under Rhea Mecca's homeowner's policy is not dispositive. Rather, the dispositive issue is whether the coverage that was provided relative to any motor vehicle under the policy was "incidental primarily because coverage of [the] vehicles was remote from and insignificant to the type of overall coverage the policy provided." *Hillyer v. State Farm Fire & Cas. Co.*, 780 N.E.2d 262, 267 (Ohio 2002) (rejecting attempt to distinguish *Davidson* on basis that policy in *Davidson* involved recreational vehicles not subject to registration and for use off public roads). Here, as the trial court aptly noted, the descriptions of coverage contained in the policy "clearly show it to be a property insurance policy." Indeed, any coverage of the ATV contained in the policy is incidental because it is insignificant to the type of overall coverage the policy provides. Accordingly, we hold that the limited coverage the policy provides for the ATV is not sufficient to transform the policy into a "motor vehicle liability policy."

The petitioner contends that for a policy to be a "motor vehicle liability policy" under RSA 259:61, coverage of motor vehicles need not be the primary purpose of the liability insurance. She posits that RSA 259:61, "by its terms broadly applies to any policy of liability insurance providing indemnity for use of a motor vehicle to which the insurance applies." We disagree.

██ In order to construe RSA 259:61 as broadly as the petitioner urges us to, we would need to add words to the statute that the legislature did not see fit to include, contrary to one of our well-established canons of statutory construction. *See Verizon New England v. City of Rochester*, 151 N.H. 263, 266 (2004). If the legislature intended to include within the statutory definition of "motor vehicle liability policy" *any* liability policy that provides *any* type of coverage for injuries or property damage resulting from the use of a motor vehicle, it could have done so. It did not. Thus, we decline the petitioner's invitation to construe the statute in a manner broad enough to encompass Rhea Mecca's homeowner's policy.

The petitioner argues that RSA 215-A:28 (Supp. 2004) compels a conclusion that the policy at issue is a "motor vehicle liability policy"

because it evidences the legislature's intent that "insurers which provide insurance to ATVs comply with the Financial Responsibility Act." The relevant portion of RSA 215-A:28 in the current version of the statute is, in substance, the same as that in effect at the time of the accident:

> I. All provisions, including the penalties, suspensions, and prohibitions of the New Hampshire financial responsibility law, and the provisions of the statutes relative to the operation of a motor vehicle, shall apply to an OHRV [off highway recreational vehicle] being operated upon a public highway.

The petitioner maintains that "it is undisputed that the ATV insured by Allstate is subject to RSA 215-A and was in use on a roadway at the time of this incident." She argues that because RSA 259:61 is part of New Hampshire's financial responsibility law, which is made applicable to ATVs by operation of RSA 215-A:28, the policy in this case is a "motor vehicle liability policy."

The parties stipulated that at the time of the accident, "Adam Mecca was operating the ATV on Derryfield Road in Derry," and that "the ATV was not operating on the premises of Rhea Mecca." We assume, for purposes of addressing the petitioner's argument, that Derryfield Road is a "public highway" under RSA 215-A:28. Furthermore, we assume that RSA 259:61 is part of New Hampshire's financial responsibility law, and that the ATV is subject to RSA 215-A:28. Even with these assumptions, however, we disagree with the petitioner. As discussed, the definition of "motor vehicle liability policy" contained in RSA 259:61 does not include *every* liability policy that provides *any* type of coverage for injuries or property damage arising from the use of a motor vehicle, and therefore does not include Rhea Mecca's homeowner's policy. We decline to read RSA 215-A:28 as altering the definition of "motor vehicle liability policy" under RSA 259:61 such that the homeowner's policy is converted into such a policy. Read together with RSA 259:61, RSA 215-A:28 is fairly construed as requiring that any "motor vehicle liability policy" under RSA 259:61 provide coverage that complies with New Hampshire's financial responsibility laws for OHRVs operating on public ways.

Next, the petitioner contends that the trial court erred in using the "reasonable expectations" test in ruling on the parties' motions for summary judgment, rather than addressing the question of whether the policy is a "motor vehicle liability policy" under RSA 259:61. Even assuming that the petitioner is correct, we nevertheless affirm because the trial court correctly ruled that Allstate is not obligated to provide coverage in connection with the accident. *See Sherryland v. Snuffer*, 150 N.H. 262,

267 (2003) (when trial court reaches correct result, but on mistaken grounds, we will affirm if valid alternative grounds support result).

The petitioner's final argument is: "Holding that the Allstate policy is a motor vehicle liability policy is consistent with reasonable legislative goals and is not absurd." The petitioner bases her argument on the premise that because the legislature regulates ATVs, *see, e.g.*, RSA 215-A:21, :29 (Supp. 2004), and has expressed, through RSA 215-A:28, its desire that New Hampshire's financial responsibility laws apply to the use of ATVs on public highways, it must be the goal of the legislature that any liability policy that provides any type of coverage for injuries or property damage arising from the use of a motor vehicle is a "motor vehicle liability policy" under RSA 259:61. As stated, however, the legislature could have easily accomplished such a goal by defining "motor vehicle liability policy" to include policies such as the homeowner's policy at issue in this case. It did not. Accordingly, we affirm the trial court's grant of summary judgment to Allstate.

*Affirmed.*

NADEAU, DALIANIS, DUGGAN and GALWAY, JJ., concurred.