Merrimack
No. 2004-869

C. EDWARD BROOM *& a.*

v.

CONTINENTAL CASUALTY CO. *& a.*

C. EDWARD BROOM *& a.*

v.

STEADFAST INSURANCE CO.

Argued: September 29, 2005
Opinion Issued: November 16, 2005

*Sheehan Phinney Bass & Green, P.A.* of Manchester (*James Q. Shirley* and *James P. Harris* on the brief, and *Mr. Harris* orally), for the appellants.

*Devine & Nyquist, P.A.* of Manchester (*Lee C. Nyquist* on the brief), and *Caron, Constants & Wilson,* of Rutherford, New Jersey (*Alfred C. Constants, III* on the brief and orally), for appellee Interstate Fire & Casualty Co.

DALIANIS, J. The appellants, C. Edward Broom, Thomas P. Broom, Christopher J. Broom and Nicholas Brunet, appeal orders of the Superior Court (*McGuire,* J.) granting summary judgment to appellee Interstate Fire and Casualty Company (Interstate), and denying their motion for reimbursement of defense costs. The appellants contend that the trial court improperly ruled that Interstate did not have a duty to defend them in an underlying lawsuit. We reverse the order granting summary judgment, vacate the order denying reimbursement of defense costs, and remand.

The underlying litigation involves a host of issues, only one of which we address here. We, therefore, recount only the facts that are relevant to the issue now before us.

The appellants were named in a lawsuit filed on October 9, 2001, in the United States District Court for the District of Oregon (the underlying suit). They were sued in their capacities as principals in Strategic Timbers Trust, Inc. (STT), a Georgia corporation.

The underlying suit arose from a failed business transaction between STT and certain plaintiffs. The plaintiffs alleged, among other things, that once the business venture collapsed, the appellants engaged in a campaign to slander them to lenders and other parties to the transaction. The underlying complaint stated, in support of the slander count:

> Once it became apparent that the deal had collapsed, and commencing at a time unknown to plaintiffs, the Broom Defendants . . . and Nicholas Brunet embarked upon a campaign to disparage plaintiffs to lenders and other parties in the transaction who suffered losses as a result of the failed IPO, with the ultimate goal of attempting to place blame for such losses on Plaintiffs, and deflect any such blame away from the Broom Defendants [and] Brunet . . . . As part of the plan to disparage Plaintiffs, Brunet began a campaign of memo writing, which

included false statements and representations regarding the Plaintiffs, claiming without any factual basis that Plaintiffs had paid to land consultants ... a "kickback" of $500,000, when no such event ever occurred. These statements were false and defendants knew they were false when they made them.

An amended complaint filed by the plaintiffs on October 31, 2001, and a demand for arbitration submitted to the American Arbitration Association on July 19, 2002, employed almost identical language. None of these pleadings identified any specific date or time period with regard to the alleged campaign of disparagement.

The allegedly defamatory memoranda were authored during 1998 and 1999. The first dissemination outside of STT was on or about September 28, 1999, when appellant Brunet sent a memorandum to a representative of one of the lender banks. A second distribution of allegedly defamatory material outside of STT occurred on or about April 27, 2000, when Brunet faxed several of the memoranda to another bank representative. On May 4, 2000, a memorandum from June 1999 was hand-delivered to the same recipient.

Strategic Timber Partners, LP (STP), of which STT was a general partner, had purchased business liability insurance coverage from Interstate for the period from April 27, 1998, to April 27, 1999. The policy contained coverage for "those sums that the insured becomes legally obligated to pay as damages because of 'personal injury.'" It further states that Interstate "will have the right and duty to defend the insured against any 'suit' seeking those damages." "Personal injury" was defined in the policy to include injury arising out of "[o]ral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services." The appellants allege that they requested a defense from Interstate by letter dated December 6, 2001, and that Interstate denied coverage on January 4, 2002.

On April 5, 2002, the appellants filed a petition for declaratory judgment in superior court against insurance carriers Continental Casualty Company (Continental), Nationwide Mutual Insurance Company (Nationwide), Travelers Property Casualty Company (Travelers), and Interstate, seeking a defense and indemnity with respect to the underlying lawsuit.

On December 20, 2002, the underlying plaintiffs amended their demand for arbitration, and for the first time identified September 28, 1999, and April 27, 2000, as the dates upon which the memoranda were allegedly distributed outside of STT.

On December 2, 2003, the trial court ruled on competing motions for summary judgment among Continental, Travelers, Nationwide, and the appellants. It concluded that Continental and Travelers owed no duty to defend or indemnify the appellants and granted their motions for summary judgment. The trial court denied Nationwide's motion for summary judgment, however, finding that the alleged defamation occurred within the boundaries of its policy coverage. Accordingly, the trial court granted the appellants' cross-motion for summary judgment against Nationwide. The December 2, 2003 order contained no rulings as to Interstate.

On June 11, 2004, the trial court ruled on competing motions for summary judgment between Interstate and the appellants. The trial court determined that the first publication of any defamatory memorandum occurred on or about September 28, 1999, and, therefore, fell outside of the Interstate policy period. Ruling that Interstate owed no coverage to the appellants, it granted Interstate's motion for summary judgment.

The appellants filed a motion for reconsideration and clarification of the June 11, 2004 order, as well as a motion for reimbursement of defense costs from Interstate. The trial court denied the motions. Because the first date of publication did not fall within the coverage period of Interstate's policy, the trial court denied the appellants' motions for reconsideration and clarification and for reimbursement of defense costs.

On appeal, the appellants assert that the trial court improperly determined that Interstate had no duty to defend them in the underlying suit. The appellants take the position that, because the underlying pleadings did not identify dates of external distribution until December 20, 2002, and the trial court did not resolve the issue of coverage until June 11, 2004, they had a "potentially covered claim" triggering Interstate's duty to defend them. We agree.

A motion for reconsideration allows a party to present points of law or fact that a court has overlooked or misapprehended. *Webster v. Town of Candia*, 146 N.H. 430, 444 (2001). We will uphold a trial court's decision on a motion for reconsideration absent an unsustainable exercise of discretion. *See id.; cf. State v. Lambert*, 147 N.H. 295, 296 (2001) (explaining unsustainable exercise of discretion standard). In reviewing the trial court's initial grant of summary judgment, we consider the affidavits and other evidence, and all inferences properly drawn from them, in the light most favorable to the non-moving party. *Marikar v. Peerless Insurance Co.*, 151 N.H. 395, 397 (2004) (*citing Peerless Ins. v. Vermont Mutual Ins. Co.*, 151 N.H. 71, 72 (2004)). If there is no genuine issue of material fact, and if the moving party is entitled to judgment as a matter of law, the grant of summary judgment is proper. *Marikar*, 151

N.H. at 397. We review the trial court's application of the law to the facts *de novo. Id.*

■ It is well-settled law in New Hampshire that an insurer's obligation to defend its insured is determined by whether the cause of action against the insured alleges sufficient facts in the pleadings to bring it within the express terms of the policy. *Martin v. Me. Mut. Fire Ins. Co.*, 145 N.H. 498, 500 (2000). In determining whether a duty to defend exists based upon the sufficiency of the pleadings, we consider the reasonable expectations of the insured as to its rights under the policy. *U.S. Fidelity & Guaranty Co., Inc. v. Johnson Shoes, Inc.*, 123 N.H. 148, 152 (1983).

Our analysis must begin with an examination of the policy language. *See Marikar*, 151 N.H. at 397. The interpretation of insurance policy language is ultimately an issue of law for this court to decide. *Progressive N. Ins. Co. v. Concord Gen. Mut. Ins. Co.*, 151 N.H. 649, 653 (2005); *see also Panciocco v. Lawyers Title Ins. Corp.*, 147 N.H. 610, 614 (2002) ("[T]he determination of whether the underlying litigation falls outside the bounds of coverage is an issue of law for the court to decide."). In interpreting policy language, we look to the plain and ordinary meaning of the policy's words in context. *Marikar*, 151 N.H. at 397. We construe the terms of the policy as would a reasonable person in the position of the insured based upon more than a casual reading of the policy as a whole. *Preferred Nat'l Ins. Co. v. Docusearch*, 149 N.H. 759, 763 (2003); *see also Progressive N. Ins. Co.*, 151 N.H. at 654.

The Interstate policy in question, purchased by STP for the coverage period April 27, 1998, to April 27, 1999, states that Interstate "will have the right and duty to defend the insured against any 'suit' seeking those damages" that result from "personal injury." "Personal injury" is defined in the policy to include injury arising out of "[o]ral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services." "Suit" is defined in the policy as a "civil proceeding in which damages because of . . . 'personal injury' . . . to which [the policy] applies are alleged." Construing these terms objectively, and in the context of the policy as a whole, we conclude that a reasonable person in the position of the insured would understand the policy to obligate Interstate to defend against a lawsuit seeking damages resulting from a "personal injury" as defined above.

Turning to whether Interstate had an obligation to defend the appellants in the underlying litigation, we must determine whether the cause of action against the appellants alleged sufficient facts in the pleadings to bring it within the express terms of the policy. The initial underlying complaint, filed October 9, 2001, alleged that "commencing at a

time unknown," the appellants "embarked upon a campaign to disparage [the] plaintiffs" and that as part of the alleged plan Brunet "began a campaign of memo writing, which included false statements and representations regarding the Plaintiffs." The complaint asserted no specific dates of publication in connection with the claimed campaign of disparagement, stating only that it "commenc[ed] at a time unknown" to the plaintiffs in the underlying action. The plaintiffs did not identify any such dates until they amended their demand for arbitration on December 20, 2002, more than a year after the appellants requested a defense from Interstate.

The publication dates identified by the plaintiffs in their December 20, 2002 amended demand for arbitration fell outside of Interstate's policy coverage period. Prior to that date, however, the publication dates were not identified. Moreover, it was not until June 11, 2004, that the trial court foreclosed the possibility that the dissemination of allegedly defamatory memoranda within STT during the policy coverage period could be considered "publication" for the purposes of the declaratory judgment action. Thus, when the appellants made their December 6, 2001 request for a defense from Interstate, there existed a reasonable possibility that the underlying claim fell within the policy's coverage.

 We have said that "[an] insurer's obligation is not merely to defend in cases of perfect declarations, but also in cases where by any reasonable intendment of the pleadings liability of the insured can be inferred, and neither ambiguity [nor] inconsistency . . . in the underlying plaintiff's complaint . . . can justify escape of the insurer from its obligation to defend." *Green Mt. Ins. Co. v. Foreman*, 138 N.H. 440, 443 (1994) (quotation omitted). In a case of doubt as to whether the complaint against the insured alleges a liability of the insurer under the policy, the doubt must be resolved in the insured's favor. *Id.* Because a reasonable intendment of the initial complaint alleged injuries potentially within the scope of Interstate's policy coverage, we conclude that Interstate owed the appellants a defense at the time it was requested, and breached that duty by denying coverage on January 4, 2002.

In light of our conclusion, we hold that the trial court's grant of summary judgment to Interstate in its June 11, 2004 order was in error. We, therefore, also hold that the trial court's order of August 23, 2004, denying the appellants' motion for reconsideration amounted to an unsustainable exercise of discretion.

 As to the appellants' motion for reimbursement of defense costs, when an insurer breaches its duty to defend, it must reimburse the insured for the costs incurred in defending the claim. *Concord Hosp. v. N.H.*

*Medical Malpractice Joint Underwriting Assoc.*, 142 N.H. 59, 61 (1997); *see also A.B.C. Builders v. American Mut. Ins. Co.*, 139 N.H. 745, 751 (1995). Interstate asserts that it owes the appellants no reimbursement for defense costs because the appellants received, in whole or in part, a defense from Continental, Nationwide, and another carrier, Steadfast Insurance Company, and because they hired their own private attorney instead of relying upon counsel retained by the carriers. By the time of the trial court's December 2, 2003 order, Continental had already expended approximately $495,000 in defending the appellants. The issue of reimbursement of defense costs, if any, is not a matter for this court to decide in the first instance. Accordingly, we vacate the trial court's order denying the appellants' motion for reimbursement of defense costs and remand for further proceedings.

At oral argument, Interstate introduced the alternative theory that it owes no duty to the appellants because they are not insureds under the policy in question. Because Interstate failed to raise this issue before the trial court, we need not address it. *See Marikar*, 151 N.H. at 397.

> *Reversed in part; vacated in part; and remanded*

BRODERICK, C.J., and NADEAU, DUGGAN and GALWAY, JJ., concurred.