Merrimack
No. 2010-370

PROGRESSIVE NORTHERN INSURANCE COMPANY

v.

ARGONAUT INSURANCE COMPANY & a.

Argued: February 16, 2011
Opinion Issued: April 26, 2011

*Wiggin & Nourie, P.A.*, of Manchester (*Gordon A. Rehnborg, Jr.* and *Mary Ann Dempsey* on the brief, and *Mr. Rehnborg* orally), for Progressive Northern Insurance Company.

*Primmer Piper Eggleston & Cramer*, of Littleton (*Gregory M. Eaton* on the brief and orally), for Argonaut Insurance Company.

*Mallory & Friedman, PLLC*, of Concord (*Mark L. Mallory* on the brief and orally), for Craig Kelly.

*A.W. Perkins Law Offices, PLLC*, of Concord (*Arthur W. Perkins* on the memorandum of law), and *Phillips Law Office, PLLC*, of Concord (*Roger B. Phillips* on the memorandum of law), for Martin and Linda Morasse.

DALIANIS, C.J. Argonaut Insurance Company (Argonaut) appeals a ruling of the Superior Court (*Smukler*, J.) denying its motion for summary

judgment and granting summary judgment to Craig Kelly and partial summary judgment to Progressive Northern Insurance Company (Progressive). We affirm.

The following facts were either found by the trial court or are undisputed by the parties. On June 7, 2006, Kelly left his car for service at Tom's Auto Sales (Tom's), which his parents own and operate. Tom's loaned Kelly a 1991 Honda Accord to use while his car was being serviced. The next day, Kelly was involved in a car accident with Martin Morasse. Subsequently, Morasse and his wife brought suit against Kelly alleging negligence and loss of consortium. At the time of the accident, Kelly had a personal automobile insurance policy issued by Progressive with liability limits of $100,000 per person; Tom's had a garage insurance policy issued by Argonaut with liability insurance limits of $25,000 and $750,000, depending upon the circumstances.

Argonaut investigated the accident and concluded that Kelly's use of the vehicle was personal and that he was not a scheduled driver on the policy. Accordingly, Argonaut concluded that it would only provide a defense to Kelly under the $25,000 limit set forth in the policy's "Additional Garage Limitations" endorsement (endorsement). Argonaut identified Progressive as the primary insurer and contended that Progressive was obligated to defend and indemnify Kelly in the Morasse lawsuit. Progressive then sued Argonaut, asserting that Argonaut must defend and indemnify Kelly under Argonaut's $750,000 policy limit. Both insurers moved for summary judgment. The trial court concluded that Argonaut was obligated to provide primary liability coverage up to $750,000 and that Progressive's policy provides excess coverage. The trial court also ruled that Progressive must pay its pro rata share of defense costs. This appeal followed.

In reviewing a trial court's summary judgment ruling, we consider the affidavits and other evidence, and all inferences properly drawn from them, in the light most favorable to the non-moving party. *Furbush v. McKittrick*, 149 N.H. 426, 429 (2003). Summary judgment may be granted only where no genuine issue of material fact is present, and the moving party is entitled to judgment as a matter of law. *Id*. We review the trial court's application of the law to the facts *de novo. Id*.

"In New Hampshire, an insurer's obligation to defend its insured is determined by whether the cause of action against the insured alleges sufficient facts in the pleadings to bring it within the express terms of the policy." *Marikar v. Peerless Ins. Co.*, 151 N.H. 395, 397 (2004) (quotation omitted). Thus, our analysis begins with an examination of the insurance policy language. *Id*. The interpretation of insurance policy language, like any contract language, is ultimately an issue of law for this court to decide.

*Id.* We look to the plain and ordinary meaning of the policy's words in context. *Id.* Policy terms are construed objectively, and when the terms of a policy are clear and unambiguous, we accord the language its natural and ordinary meaning. *Id.* When an insurance policy's language is ambiguous, however, and one reasonable interpretation favors coverage, we construe the policy in the insured's favor and against the insurer. *Id.*

Argonaut's primary argument is that its liability in this case is limited to the financial responsibility law limit of $25,000, *see* RSA 259:61 (Supp. 2010), pursuant to the endorsement. The endorsement states:

> The limits for Liability Coverage applicable to "bodily injury", "property damage" or "loss" arising out of the use of covered "autos" owned by you and "furnished or available for regular use" of owners, partners, officers, employees, spouses, children or relatives of yours or any other person are reduced to the compulsory or financial responsibility law limits for any claim arising from an "accident" which occurs while a covered "auto" is being driven by any driver who is not listed on this endorsement. "Furnished or available for regular use" means the right to frequent use of an "auto" for purposes that are not necessary or incidental to ["]garage operations[."] This limitation does not apply to the persons named in the Schedule of Drivers Furnished "Autos."

The parties agree that, pursuant to the endorsement, Argonaut's coverage is limited to $25,000 when the covered auto is: (1) owned by the named insured; (2) used by a driver not listed on the schedule; (3) used "for purposes that are not necessary or incidental to [']garage operations[']"; and (4) used by a driver who has the "right to frequent use" of the covered auto. Because the parties agree on this construction, we will apply it. There is no dispute as to the first two elements — Kelly was using a covered auto owned by the named insured and he was not a driver listed on the schedule. The parties dispute whether the third and fourth elements are also met.

We begin by addressing the third element: whether Kelly was using the covered auto "for purposes that are not necessary or incidental to [']garage operations.[']" Argonaut suggests that we should not consider this element because Progressive did not previously make this argument before the trial court. We disagree. The issue of the interpretation of Argonaut's endorsement is properly preserved for our review and is a question of law, which we review *de novo. Concord Gen. Mut. Ins. Co. v. Green & Co. Bldg. & Dev. Corp.*, 160 N.H. 690, 693 (2010).

The endorsement requires us to consider whether Kelly was using a covered vehicle for "purposes that are not necessary or incidental to ['garage operations.[']" The policy defines "[g]arage operations" as

> the ownership, maintenance or use of locations for garage business and that portion of the roads or other access that adjoin these locations. *"Garage operations" includes the ownership, maintenance or use of the "autos" indicated in Section I of this Coverage Form as covered "autos".* "Garage operations" also include all operations necessary or incidental to a garage business.

(Emphasis added.)

■■■ Progressive asserts that, based upon the second sentence of this definition, "garage operations" includes all use of the covered vehicles. Argonaut appears to argue that the definition should be read as a whole such that a person's use of a covered auto must be necessary or incidental to a garage business. There is support for both interpretations. *Compare Spangle v. Farmers Ins. Exchange*, 82 Cal. Rptr. 3d 763, 769-70 (Ct. App. 2008), *with Lambert v. Northwestern Nat. Ins. Co.*, 769 P.2d 1152, 1155-56 (Idaho Ct. App. 1989). However, adopting Progressive's construction would render the endorsement a nullity, which we will not do. *See Weeks v. Co-Operative Ins. Cos.*, 149 N.H. 174, 177-78 (2004) (interpreting policy in manner that would render exclusion meaningless is not reasonable); *Int'l Surplus Lines Ins. Co. v. Mfgs. & Merchants Mut. Ins. Co.*, 140 N.H. 15, 19 (1995) (language in insurance policy not presumed to be mere surplusage). Accordingly, we accept Argonaut's construction that "garage operations" includes the use of a covered auto for operations that are necessary or incidental to a garage business. Even applying this definition, Tom's provided the accident vehicle, a "covered auto," to Kelly as a "loaner" while his car was being repaired at Tom's; thus, his use was incidental to Tom's garage business. *See Henry ex rel. Weis v. General Cas. Co.*, 593 N.W.2d 913, 919 (Wis. Ct. App. 1999). Therefore, Kelly's use of the "loaner" fits the definition of "garage operations."

Because Kelly's use of the accident vehicle fell within "garage operations," the third element of the endorsement is, therefore, not met. Accordingly, even if we assume that Kelly met the fourth element of the endorsement, in that he had a "right to frequent use" of the covered auto, the endorsement would still not apply because, by definition, Kelly was using the covered auto for garage operations.

Argonaut asserts that if Kelly did not have the right to frequent use of Tom's vehicles and was not using the accident vehicle for a purpose

incidental to Tom's garage business, then Kelly must have been a customer of Tom's. The Argonaut policy contains a separate provision, which limits Argonaut's liability when a customer of Tom's drives a covered auto. The trial court concluded that the customer provision did not apply to Kelly because "he did not pay and did not intend to pay for the work" done on his car. We decline to address Argonaut's argument that Kelly was a customer of Tom's because Argonaut did not challenge the trial court's ruling in its notice of appeal. *See LaMontagne Builders v. Bowman Brook Purchase Group*, 150 N.H. 270, 276 (2003) (arguments not included in notice of appeal are deemed waived).

Argonaut next argues that Argonaut and Progressive should contribute to any settlement or judgment in favor of the Morasses on a pro rata basis. Progressive acknowledges that it must provide coverage to Kelly, but maintains that its coverage is excess over Argonaut's coverage.

Both the Argonaut and the Progressive policies contain "other insurance" clauses. The Argonaut clause states that, "[f]or any covered 'auto' you own, this Coverage Form provides primary insurance." The clause further states, "When this Coverage Form and any other Coverage Form or policy covers on the same basis, either excess or primary, we will pay only our share." The Progressive clause provides that "any insurance we provide for a . . . vehicle, other than a covered vehicle . . . will be excess over any other collectible insurance."

Therefore, we consider whether Argonaut's coverage is, as Progressive asserts, primary coverage, or, as Argonaut maintains, pro rata coverage. The Argonaut clause provides that its coverage is primary for any auto "you" own. "[Y]ou" refers to the "Named Insured shown in the Declarations." "Tom's Auto Sales, Inc." is the "Named Insured" listed in the Declarations. It is undisputed that Tom's owned the accident vehicle. Therefore, the Argonaut policy provides primary coverage.

Argonaut attempts to convert its primary coverage into pro rata coverage by way of the second sentence of its "other insurance" clause, which states that, under certain circumstances, Argonaut will pay "only [its] share." However, the language upon which Argonaut relies is only triggered when there exists "any other Coverage form or policy" that covers "on the same basis." Here, the basis for Argonaut's coverage is that the accident vehicle was owned by its named insured. The basis for Progressive's coverage is that its insured was driving the accident vehicle. Thus, the Progressive policy does not cover on the same basis as the Argonaut policy. Accordingly, the pro rata provision of Argonaut's policy is not triggered. Argonaut's policy affords primary coverage for the accident and Progressive's policy affords excess coverage. Because Argonaut's pro

rata provision does not apply, we need not address Argonaut's assertion that its pro rata provision and Progressive's excess provision are mutually repugnant and, thus, both insurers must provide coverage on a pro rata basis.

■■ Argonaut next asserts that the costs of defense in this case should be shared equally between Argonaut and Progressive. Progressive maintains that the issue of defense costs was not raised in the notice of appeal and thus was not properly preserved for our review. Argonaut contends that the issue of defense costs is a subsidiary question contained in its third issue raised on appeal that "the trial court err[ed] in finding that the Progressive policy . . . is excess to the Argonaut policy" and that "the 'other insurance' clauses of the policies require Progressive and Argonaut to share any coverage on a pro-rata basis." "Appellate questions not presented in a notice of appeal are generally considered waived by this court." *Lassonde v. Stanton*, 157 N.H. 582, 587 (2008).

> While the statement of a question need not be worded exactly as it was in the appeal document, the question presented shall be the same as the question previously set forth in the appeal document. The statement of a question presented will be deemed to include every subsidiary question fairly comprised therein.

SUP. CT. R. 16(3)(b). The issue raised in Argonaut's notice of appeal is limited to the coverage afforded by each insurer; we do not find that defense costs are subsumed in that question. Therefore, we decline to address Argonaut's argument regarding defense costs. *Lassonde*, 157 N.H. at 587-88; SUP. CT. R. 16(3)(b).

■■ Argonaut contends that we may still consider the issue of defense costs under our plain error analysis. *See* SUP. CT. R. 16-A. Even assuming that the trial court erroneously allocated defense costs, we do not find the error plain. For the plain error rule to apply: "(1) there must be an error; (2) the error must be plain; (3) the error must affect substantial rights; and (4) the error must seriously affect the fairness, integrity or public reputation of judicial proceedings." *Clark & Lavey Benefits Solutions v. Educ. Dev. Ctr.*, 157 N.H. 220, 225 (2008) (quotation omitted). "An error is plain if it was or should have been 'obvious' in the sense that the governing law was clearly settled to the contrary." *Id.* (quotation omitted). "Generally, when the law is not clear at the time of trial, and remains unsettled at the time of appeal, a decision by the trial court cannot be plain error." *Id.* (quotation omitted). As we have never addressed the precise issue of allocation of defense costs between a primary insurer and an excess insurer, and the trial court relied upon authority from other jurisdictions to support its

ruling, we cannot say that the law in this area is settled. Accordingly, we decline to hold that the trial court committed plain error.

The remaining issues raised by Argonaut in its notice of appeal, but not briefed, are deemed waived. *In re Estate of King*, 149 N.H. 226, 230 (2003).

*Affirmed.*

DUGGAN and LYNN, JJ., concurred.