Merrimack
No. 94-133

INTERNATIONAL SURPLUS LINES INSURANCE COMPANY

v.

MANUFACTURERS & MERCHANTS MUTUAL INSURANCE
COMPANY & a.

July 19, 1995

16

*Wiggin & Nourie, P.A.*, of Manchester (*Gary M. Burt* on the brief and orally), for the plaintiff.

*McLane, Graf, Raulerson & Middleton, P.A.*, of Manchester (*Jack B. Middleton & a.* on the brief, and *Mr. Middleton* orally), for the defendants.

JOHNSON, J. The defendants, Manufacturers & Merchants Mutual Insurance Company (MMMIC) and its president, Charles J. Gesen,

appeal the Superior Court's (*Arnold*, J.) ruling that the plaintiff, International Surplus Lines Insurance Company (ISLIC), need not defend and indemnify them under a professional liability policy in suits brought against the defendants by some of MMMIC's former shareholders. We affirm based on an exclusion in the policy barring coverage for claims arising from "any act, error or omission occurring prior to the effective date of this policy if . . . the insured at the effective date of this policy knew or could have reasonably foreseen that such act, error or omission might be the basis for claim or suit." ISLIC filed a cross-appeal, but our holding obviates the need to address the issue raised therein.

The trial court made the following findings of fact. For many years, MMMIC operated as a hybrid mutual/stock company. At some point, the New Hampshire Insurance Department (the department) questioned the nature of MMMIC's corporate form. After holding hearings on the issue, the department ordered MMMIC in 1986 to begin operating solely as a mutual company. MMMIC, accordingly, developed a plan to redeem all of its outstanding stock. Eight and one half million dollars were to be paid to MMMIC's twenty-nine shareholders in exchange for their stock, two million dollars placed in escrow to pay for the costs of transacting the redemption, and six million dollars retained in MMMIC's surplus. In addition, the shareholders were to be held liable for any transaction costs in excess of the escrow amount, including State and federal taxes. The shareholders approved the plan in December 1986, and the stock was redeemed later that month.

The transaction costs exceeded the escrow amount by $131,167. In December 1987, MMMIC requested payment of the excess from the former shareholders. A group of these former shareholders did not pay and hired an attorney, Russell Hilliard, to represent their interests. In early 1988, Hilliard asked MMMIC's then-attorney, Sherilyn Burnett Young, for documents relating to the department hearings and the approval of the redemption plan.

In July 1988, Hilliard wrote to Young:

> For a variety of reasons, my clients . . . remain unwilling to make any payments for the so-called excess transaction costs, or to acknowledge any liability with respect to the business profits tax contingency. As you know, these reasons include questions with respect to the *asset valuation*, the tax treatment of the redemption, and the lack of notification as to the business profits tax matter.

(Emphasis added.) "[A]sset valuation" referred to the valuation of MMMIC's assets for purposes of determining the redemption price of its stock. At a meeting in August 1988 attended by Gesen, Hilliard, and some of the protesting shareholders, Hilliard described his clients' grievances concerning the stock redemption, including their complaints about the asset valuation; one of the shareholders told Gesen he was "inept."

In December 1988, Young sought "to confirm that the remaining issues outstanding to resolve the stock redemption questions with your clients are the Business Profits Tax (BPT) liability and this tax issue." Hilliard replied in January 1989 that, in addition, "my clients have other concerns about the manner in which the redemption plan was accomplished, and the substance of it." Hilliard had explained earlier that his clients felt that the asset valuation had been performed incorrectly, resulting in their stock being undervalued.

On May 3, 1989, the ISLIC policy at issue here became effective. In this one-year policy, ISLIC promises:

> To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as money damages as a result of claims first made against the insured and reported to the company during the policy period by reason of any act, error or omission in . . . directing or managing the named insured.

Exclusion (i) of the policy bars coverage for claims based on "any act, error or omission occurring prior to the effective date of this policy if . . . the insured at the effective date of this policy knew or could have reasonably foreseen that such act, error or omission might be the basis for claim or suit."

On December 21, 1989, Hilliard, on behalf of his clients, made a formal demand that MMMIC pay each protesting shareholder $100,000 "in full satisfaction of any and all claims each may have with respect to the valuation and redemption process." MMMIC promptly notified ISLIC of a possible claim against the company and in August 1990 sued the protesting shareholders for payment of the excess transaction costs. The shareholders then sued MMMIC and Gesen for rescission of the redemption plan and damages for undervaluation of the stock they had held.

ISLIC petitioned the superior court for a declaratory judgment that it was not obligated to defend or indemnify MMMIC and Gesen in the lawsuits brought by the protesting shareholders. After hearing testimony from Young, Hilliard, and Gesen, the court ruled

in ISLIC's favor based on exclusion (i). It found that "prior to May 3, 1989, MMMIC and Charles Gesen . . . knew or reasonably could have foreseen that their acts, errors or omissions might be the basis for claim or suit." The defendants appealed.

The parties agree that claims were first made against the defendants during the May 3, 1989—May 3, 1990 policy period, but disagree over the application of exclusion (i). The defendants argue first that exclusion (i) is overly broad and harsh, leaving the policyholder at the mercy of the insurer. *See Thiem v. Thomas*, 119 N.H. 598, 604, 406 A.2d 115, 119 (1979). As stated, the exclusion bars coverage for claims based on "any act, error or omission occurring prior to the effective date of this policy if . . . the insured at the effective date of this policy knew or could have reasonably foreseen that such act, error or omission might be the basis for claim or suit." Focusing on the word "might," the defendants state in their brief that "an insured in our litigious society could reasonably foresee that its every 'act' '*might* be the basis for claim or suit.'"

Although the word "might" could be stretched to achieve such a construction, the context in which it appears does not support this interpretation. If "might" were so all-encompassing, no coverage would exist for any claims arising from prior acts, and that part of the exclusion which relates to foreseeability and the insured's knowledge would be rendered surplusage. We will not presume language in a policy to be mere surplus. *Commercial Union Assurance Co. v. Brown Co.*, 120 N.H. 620, 623, 419 A.2d 1111, 1113 (1980).

Moreover, we do not believe that the trial court interpreted the exclusion in such a broad manner. The court did not rule in ISLIC's favor simply because the shareholders' claims were based on prior acts. Rather, it found exclusion (i) applicable because, it concluded, the defendants could have reasonably foreseen before May 3, 1989—the effective date of the policy—that these acts might be the basis for a claim or suit. The shareholders' suits were based on a claim that MMMIC undervalued its assets and thereby underpaid the shareholders for their stock. The trial court noted that Hilliard, on behalf of the shareholders, expressed this concern to the defendants before May 3, 1989.

The defendants next argue that exclusion (i) is ambiguous and therefore should be construed against ISLIC, the insurer. It is true that the insurer bears the burden of proving lack of coverage, RSA 491:22-a (1983), that ambiguities are generally construed against

the insurer, *Smith v. Liberty Mut. Ins. Co.*, 130 N.H. 117, 123-24, 536 A.2d 164, 167-68 (1987), and that ambiguity exists if "reasonable disagreement between the contracting parties is possible," *id.* at 122, 536 A.2d at 166. Ambiguity, however, serves to aid the policyholder only if one of the possible meanings of the clause at issue favors coverage. *Coakley v. Maine Bonding & Cas. Co.*, 136 N.H. 402, 410, 618 A.2d 777, 781-82 (1992). Moreover, where policy language is clear, this court will not create an ambiguity simply to construe the policy against the insurer. *Robbins Auto Parts, Inc. v. Granite State Ins. Co.*, 121 N.H. 760, 764, 435 A.2d 507, 509 (1981). Rather, "[i]n determining whether an ambiguity exists, we will look to the claimed ambiguity, consider it in its appropriate context, and construe the words used according to their plain, ordinary, and popular definitions." *Id.*

The defendants argue that exclusion (i) could reasonably be interpreted to require evidence that a third party is contemplating a claim against the insured. Because, the defendants assert, no such evidence was presented at trial, the exclusion should not be applied to bar coverage here. We disagree with the defendants' construction of the exclusion. Nothing in the policy language suggests that the insured must have evidence that the claimant is actually contemplating a suit against it. Rather, the exclusion bars coverage if the insured "knew or could have reasonably foreseen that [a prior] act, error or omission might be the basis for claim or suit."

Evidence that a third party is contemplating suit would certainly trigger operation of the exclusion, but other evidence could as well. Here, for example, although no shareholder told the defendants prior to May 3, 1989, that he or she was contemplating suit, the shareholders did inform them of their complaints regarding asset valuation well before the policy's effective date. Such complaints were not simply defenses to MMMIC's request for payment of excess transaction costs. They were instead grievances regarding the amount of money MMMIC had paid the shareholders for their stock. If the shareholders' grievances had merit, the defendants' liability to the shareholders would have greatly exceeded the excess transaction costs sought from them by MMMIC. It would have been reasonable to conclude that the shareholders might bring suit to recover the money they believed the defendants owed them. Thus, even in the absence of evidence that the shareholders were actually contemplating suit, the defendants "could have reasonably foreseen that [a prior] act, error or omission might be the basis for claim or suit."

The defendants' interpretation of exclusion (i) is unreasonably narrow and not supported by the plain language of the exclusion. As we are unable to conceive of a reasonable construction of the language that would afford coverage for the defendants here, we reject their ambiguity argument. We note that several other jurisdictions have found similar exclusions unambiguous, *Professional Mgrs. v. Fawer, Brian, Hardy & Zatzkis*, 799 F.2d 218, 224 (5th Cir. 1986); *Phoenix Ins. Co. v. Sukut Const. Co., Inc.*, 186 Cal. Rptr. 513, 514-15 (Ct. App. 1982); *LPLIC v. Dolan, Fertig & Curtis*, 524 So. 2d 677, 678 (Fla. Dist. Ct. App.), *review denied*, 536 So. 2d 243 (Fla. 1988); *Stiefel v. Illinois Union Ins. Co.*, 452 N.E.2d 73, 75-76 (Ill. App. Ct. 1983); *Tewell, Thorpe v. Continental Cas.*, 825 P.2d 724, 726-28 (Wash. Ct. App. 1992), and we know of no court that has held otherwise.

The defendants next contend that the trial court erred in concluding that they could have foreseen, prior to May 3, 1989, that the shareholders might file affirmative claims against them based on the stock redemption. Findings of fact by the trial court, of course, are accorded deference on appeal. This court will not disturb them unless they are "lacking in evidential support or tainted by error of law." *Gelinas v. Metropolitan Prop. & Liability Ins. Co.*, 131 N.H. 154, 160-61, 551 A.2d 962, 966 (1988) (quotation omitted). A review of the transcript of the hearing below, as well as all of the exhibits, reveals that the trial court's findings are neither lacking in evidential support nor tainted by error of law. Each finding described in the first part of this opinion enjoys support in the record. Although the evidence conflicts in several material respects, the trial court was entitled to resolve these conflicts against the defendants. *See McCabe v. Arcidy*, 138 N.H. 20, 24, 635 A.2d 446, 449 (1993). Moreover, the record amply supports the trial court's ultimate conclusion that the defendants could have reasonably foreseen that the shareholders might bring these claims. *Cf . Thibeault v. Sears, Roebuck & Co.*, 118 N.H. 802, 809, 395 A.2d 843, 847-48 (1978) (in tort suits, reasonableness and foreseeability are questions for trier of fact). Indeed, the evidence supports the court's finding that the shareholders told the defendants prior to May 3, 1989, of the very complaints that formed the basis for the shareholders' suits.

The defendants additionally argue that the record does not support applying exclusion (i) against Gesen individually. We disagree. As president of MMMIC, Gesen involved himself extensively in the redemption process and knew of the stockholders' discontent.

In addition, his testimony that one of the shareholders called him "inept" during a meeting about their grievances adequately supports the conclusion that Gesen could have reasonably foreseen that the shareholders might blame him—and, thus, hold him responsible—for their situation.

■ Finally, the defendants argue that the trial court should not have found exclusion (i) applicable without a finding that ISLIC was prejudiced by the defendants' untimely notice of the claims against them. Exclusion (i), however, is not a notice provision; it is an exclusion for certain foreseeable claims based on acts that occurred prior to the policy's effective date. The exclusion contains no notice requirement. Thus, regardless of whether an insured tells ISLIC of a possible claim prior to the policy's effective date, coverage for such claims is barred "if . . . the insured at the effective date of this policy knew or could reasonably have foreseen that [a prior] act, error or omission might be the basis for claim or suit." Moreover, engrafting a prejudice requirement onto exclusion (i) would be unjustified because ISLIC has the right to exclude from coverage certain classes of risks.

*Affirmed.*

HORTON, J., did not sit; the others concurred.