NOTICE: This opinion is subject to motions for rehearing under Rule 22 as well as formal revision before publication in the New Hampshire Reports. Readers are requested to notify the Reporter, Supreme Court of New Hampshire, One Charles Doe Drive, Concord, New Hampshire 03301, of any editorial errors in order that corrections may be made before the opinion goes to press. Errors may be reported by email at the following address: reporter@courts.state.nh.us. Opinions are available on the Internet by 9:00 a.m. on the morning of their release. The direct address of the court's home page is: https://www.courts.nh.gov/our-courts/supreme-court

THE SUPREME COURT OF NEW HAMPSHIRE

———————————————

Hillsborough-northern judicial district
No. 2021-0280

CINCINNATI SPECIALTY UNDERWRITERS INSURANCE COMPANY

v.

BEST WAY HOMES, INC. & a.

Argued: March 17, 2022
Opinion Issued: April 27, 2022

Getman, Schulthess, Steere & Poulin, P.A., of Manchester (Christopher J. Poulin, on the brief and orally), for the plaintiff.

Van Dorn, Curtiss, Rousseau & Ross, PLLC, of Lebanon (Cristina Rousseau on the brief and orally), for defendant Russell Blodgett.

John J. Cronin III, PC, of Bennington, for defendant Best Way Homes, Inc., filed no brief.

DONOVAN, J. Defendant Russell Blodgett appeals an order of the Superior Court (Delker, J.) granting summary judgment in favor of the plaintiff, Cincinnati Specialty Underwriters Insurance Company (CSU). Blodgett argues

that the trial court erred by concluding that the terms of a commercial general liability policy issued by CSU clearly and unambiguously excluded coverage for Blodgett's damages in a separate personal injury action against CSU's insured resulting from Blodgett's fall from an alleged negligently constructed staircase. We conclude that, pursuant to the policy's clear and unambiguous language, CSU has no duty or obligation to defend or indemnify its insured in the underlying litigation. Accordingly, we affirm.

## I. Facts[1]

The following facts are undisputed or otherwise supported by the record. CSU's insured, defendant Best Way Homes, Inc. (Best Way), is a general contractor. In May 2012, Best Way entered into a contract with a homeowner to perform renovations at his residence (the property). The project included constructing a deck with an attached staircase. Pursuant to an oral agreement, Best Way subcontracted the construction of the deck and staircase to Bob Wood Construction, which completed the project in 2012.

In 2017, the homeowner hired Blodgett to perform plumbing services at the property. Blodgett was injured when the staircase separated from the deck as he was descending it, causing him to fall approximately ten feet and suffer injuries. In April 2020, Blodgett initiated a lawsuit alleging claims against the homeowner for negligence and against Best Way for negligent failure to inspect, warn, and remove hazards, as well as a separate claim against Best Way for negligent hiring and supervision. At the time of the injury, but not at the time of construction, Best Way was the named insured under the CSU policy, which was in effect from June 29, 2016 to June 29, 2017. The CSU policy covered bodily injuries caused by an "occurrence" that happened during the policy period. The policy also contained an exclusionary provision, which provided:

A. Section IV – Commercial General Liability Conditions is amended to include the following language:

As a condition to and for coverage to be provided by this policy, you must do all of the following:

1. Obtain a formal written contract with all independent contractors and subcontractors in force at the time of the injury or damage verifying valid Commercial General Liability Insurance written on an "occurrence" basis with Limits of Liability of at least:

---

[1] CSU's motion to strike evidence not part of the summary judgment record contained in Blodgett's brief and appendix is granted.

a. $1,000,000 each "occurrence";
b. $2,000,000 general aggregate, per project basis; and
c. $2,000,000 Products-Completed Operations aggregate.

2. <u>Obtain a formal written contract stating the independent contractors and subcontractors</u> have agreed to defend, indemnify and hold you harmless from any and all liability, loss, actions, costs, including attorney fees for any claim or lawsuit presented, arising from the negligent or intentional acts, errors or omissions of any independent contractor or subcontractor.

3. Verify in the contract that your independent contractors and subcontractors have named you as an additional insured on their Commercial General Liability Policy for damages because of "bodily injury", "property damage", and "personal and advertising injury" arising out of or caused by any operations and completed operations of any independent contractor or subcontractor. Coverage provided to you by any independent contractor or subcontractor must be primary and must be provided by endorsement CG 20 10 (7/04 edition) and CG 20 37 (7/04 edition), or their equivalent. <u>Completed operations coverage must be maintained for a minimum of two years after the completion of the formal written contract</u>.

**This insurance will not apply to any loss, claim or "suit" for any liability or any damages arising out of operations or completed operations performed for you by any independent contractors or subcontractors unless all of the above conditions have been met**.

(Emphasis added; bolding in original.)

In October 2020, CSU filed a petition for declaratory judgment, seeking a declaration that it had no duty or obligation to defend or indemnify Best Way with respect to Blodgett's negligence claims. CSU also moved for summary judgment, arguing that Best Way did not obtain a formal written contract from the subcontractor and thus did not satisfy the conditions precedent to coverage set forth in the exclusionary provision. CSU argued that, as a matter of law, the claims against Best Way were excluded from coverage by the unambiguous terms of the exclusionary provision. In response, Blodgett and Best Way argued, among other things, that CSU was not entitled to summary judgment because: (1) the claims asserted against Best Way for negligent supervision and hiring did not arise out of the work of the subcontractor and thus were not

precluded from coverage by the exclusionary provision; and (2) CSU suffered no prejudice as a result of Best Way's failure to obtain a written contract with the subcontractor.

The trial court granted CSU's motion for summary judgment. The court found that the terms of the policy's exclusionary provision were "clear and unambiguous" and that Best Way failed to comply with those terms. The court further found that "all claims in the underlying action" arose out of the subcontractor's work and, therefore, were subject to the policy's exclusionary provision. The court reasoned that "there would be no damages under the negligence claims alleged against Best Way absent the alleged negligence of the subcontractor." With respect to the prejudice argument, the court determined that "New Hampshire does not require a showing of prejudice outside of the late notice context." The court concluded that, because CSU did not allege untimely notice of the claims, CSU was not required to prove that Best Way's failure to comply with the terms of the exclusionary provision prejudiced CSU. As a result, the court determined that the policy's exclusionary provision precluded coverage for Blodgett's injuries. This appeal followed.

## II. Standard of Review

When reviewing a trial court's grant of summary judgment, we consider the affidavits and other evidence, and all inferences properly drawn from them, in the light most favorable to the non-moving party. See Peerless Ins. v. Vt. Mut. Ins. Co., 151 N.H. 71, 72 (2004). If there is no genuine issue of material fact, and if the moving party is entitled to judgment as a matter of law, the grant of summary judgment is proper. Id. We review the trial court's application of the law to the facts de novo. Id.

This appeal requires that we interpret the parties' insurance policy. "The interpretation of insurance policy language, like any contract language, is ultimately an issue of law for the court to decide." Id. "We look to the plain and ordinary meaning of the policy's words in context." Id. "Policy terms are construed objectively, and [when] the terms of a policy are clear and unambiguous, we accord the language its natural and ordinary meaning." Id.

The insurer asserting an exclusion of coverage bears the burden of proving that the exclusion applies. RSA 491:22-a (2010); Progressive N. Ins. Co. v. Concord Gen. Mut. Ins. Co., 151 N.H. 649, 653 (2005). Any limitation on coverage must be stated in such "clear and unambiguous terms" that the insured can have no reasonable expectation that coverage exists. Santos v. Metro. Prop. & Cas. Ins. Co., 171 N.H. 682, 686 (2019). When determining whether an ambiguity exists, we look to the claimed ambiguity and consider it in its appropriate context. Id. If one of the reasonable meanings of the language favors the policyholder, the ambiguity will be construed against the insurer, in order to honor the insured's reasonable expectations. Id.

4

On appeal, Blodgett does not dispute that Best Way failed to satisfy the requirements for coverage set forth in the policy's exclusionary provision. Nonetheless, Blodgett argues that the exclusionary provision does not preclude coverage in this case. Blodgett asserts that, based upon the plain meaning of its terms, the exclusionary provision does not apply to negligent acts that occurred before the policy's effective date. He therefore argues that, because the subcontractor constructed the stairs in 2012 — approximately four years before the policy became effective — the exclusionary provision does not apply in this case.

To support his argument, Blodgett points to the language in the exclusionary provision requiring Best Way to "[o]btain a formal written contract with all independent contractors and subcontractors in force at the time of the injury or damage." He argues that this language — written in the present tense — indicates that the exclusionary provision applies only to damages that occur as a result of a subcontractor's work performed during the policy's coverage period. He argues that this interpretation is "further supported by the requirement . . . that completed operations coverage be maintained for a minimum of two years, not indefinitely." Alternatively, Blodgett argues that this language is ambiguous and should be interpreted in favor of the policyholder as inapplicable to work completed by a subcontractor before the policy existed. We disagree.

We begin by noting the difference between an occurrence policy and a claims-made policy. "Under claims-made contracts, it is the time that the claimant first makes a claim against the policyholder that determines whether the insurance contract must respond to an otherwise covered loss, rather than the timing of bodily injury or property damage." Scott M. Seaman & Jason R. Schulze, Allocation of Losses in Complex Insurance Coverage Claims § 2:3 (2021). "Most claims-made contracts have retroactive dates, which often are the contract inception dates, but can be earlier." Id. By contrast, "[u]nder occurrence-based contracts, the contract or contracts in effect at the time bodily injury or property damage takes place must respond to an otherwise covered loss." Id.; see Bianco Prof. Assoc. v. Home Ins. Co., 144 N.H. 288, 295-96 (1999) ("An occurrence policy covers all claims based on an event occurring during the policy period . . . ." (quotation and brackets omitted)). Here, it is undisputed that the CSU policy is an occurrence policy, which covered "bodily injury" or "property damage" that "occur[red] during the policy period."

Turning to the language of the exclusionary provision, it states that "[t]his insurance will not apply . . . unless all of the above conditions have been met." The exclusionary provision includes three clear and unambiguous

conditions precedent to coverage, each of which required a formal written contract with the subcontractor.  See Santos, 171 N.H. at 688 (holding that "provisions which commence with words such as . . . 'on condition that' . . . create conditions precedent").  Indeed, at least one other court, the United States District Court for the Eastern District of Washington, has reached the same conclusion when interpreting a nearly identical insurance policy issued by CSU.  See Cincinnati Specialty U/W Ins. v. Milionis Const., 352 F. Supp. 3d 1049, 1055 & n.5 (E.D. Wash. 2018) (interpreting the exclusionary provision as requiring the insured to meet "three explicit, unambiguous conditions" and noting that the provision was "subject to only one reasonable interpretation").

We are unpersuaded by Blodgett's argument that the present tense language in the three conditions precedent precludes the exclusionary provision in the CSU policy from applying to work completed prior to the effective date of the policy.  In North American Capacity Insurance Co. v. Claremont Liability Insurance Co., the California Court of Appeal interpreted similar conditions precedent, which stated that as a condition of coverage the insured "will receive" and "will obtain" a hold harmless agreement and a certificate of insurance from each independent contractor.  North American Capacity Ins. Co., 99 Cal. Rptr. 3d 225, 241 (Ct. App. 2009) (quotations omitted).  Relying upon prior case law, the court determined that the tense of the language used in the conditions precedent had "no temporal reference and meant simply that the insured must have satisfied the preconditions to coverage in order for coverage to apply to the claim."  Id. (citing Scottsdale Ins. Co. v. Essex Ins. Co., 119 Cal. Rptr. 2d 62 (Ct. App. 2002)).  Accordingly, the court concluded that the endorsement in the insurance policy applied at "all times [the insured] sought coverage for operations performed or to be performed on its behalf by an independent contractor whether or not the subcontracts were already in existence at the policy's inception."  North American Capacity Ins. Co., 99 Cal. Rptr. 3d at 241.

We similarly interpret the present tense language in the exclusionary provision as having "no temporal reference" and meaning "simply that [CSU] must have satisfied the preconditions to coverage in order for coverage to apply to the claim."  Id.  That the conditions precedent employ present tense language does not mean that the exclusionary provision is limited to injuries resulting from the subcontractor's work performed during the policy's coverage period.  Rather, it merely indicates that the insured must meet the conditions precedent at the time it seeks coverage in order for the policy to cover the damages.  Therefore, when considered in the appropriate context, see Santos, 171 N.H. at 686, no reasonable person in the position of the insured could have construed the conditions precedent of the exclusionary provision as having a temporal reference.

Moreover, other language in the exclusionary provision not included in the conditions precedent — written in the past tense — indicates that the provision applies to negligent acts committed before the policy's inception. Specifically, the exclusionary provision states that the CSU policy will not apply "to any loss, claim or 'suit' for any liability or any damages arising out of operations or <u>completed</u> operations <u>performed</u> for you by any independent contractors or subcontractors" unless all of the conditions have been met. (Emphases added.) Accordingly, we conclude that the exclusionary provision unambiguously applies whenever Best Way seeks coverage under the CSU policy, regardless of whether the acts or omissions that caused the damages occurred prior to the policy's effective date.

Blodgett further argues that the phrase "arising out of" in the exclusionary provision demonstrates that the provision does not apply to his negligence claims against Best Way. In his view, these claims are based upon Best Way's independent actions and omissions, not the work performed by the subcontractor. Alternatively, Blodgett argues that the phrase "arising out of" creates ambiguity with respect to the provision's application and that such ambiguity should be construed in the insured's favor. We disagree.

As the trial court noted, we have consistently construed the term "arising out of" broadly to mean "originating from or growing out of or flowing from." <u>Merrimack School Dist. v. Nat'l School Bus Serv.</u>, 140 N.H. 9, 13 (1995) (quotation omitted). Here, "the focus is upon whether the alleged harm arose from an act excluded under the policy," that being in this instance the operations of the subcontractor. <u>Philbrick v. Liberty Mut. Fire Ins. Co.</u>, 156 N.H. 389, 393 (2007). Blodgett contends that our previous holdings in <u>Philbrick</u> and <u>Merrimack</u> are distinguishable because they involved one causal act, whereas Blodgett's claims arise from multiple acts and omissions by Best Way for failing to inspect the staircase, warn the owner, or remedy the defect. Blodgett maintains that these subsequent independent omissions sever the causal connection between the subcontractor's work and the claims for negligent failure to warn, inspect, and remedy, as well as negligent hiring and supervision.

We are unpersuaded. Ultimately, the damages alleged by Blodgett — his physical injuries — arose from the subcontractor's allegedly negligent construction of the staircase that led to its collapse. As the trial court observed, there would be no claims against Best Way but for the alleged negligence of the subcontractor. As such, the claims against Best Way — including those based upon its subsequent omissions after the construction of the staircase — flow from the subcontractor's alleged negligence and establish a causal connection between the subcontractor's work and Blodgett's claims against Best Way. See <u>Philbrick</u>, 156 N.H. at 393. Accordingly, we conclude

7

that all claims against Best Way arose out of the work of the subcontractor and the exclusionary provision precludes coverage in the underlying litigation.[2]

Blodgett counters by pointing to Cincinnati Specialty Underwriters Insurance Company v. Preferred Wright-Way Remodeling and Construction, LLC, No. 6:18-CV-00161-JDK, 2019 WL 6699818 (E.D. Tex. June 28, 2019). In that case, the United States District Court for the Eastern District of Texas interpreted a nearly identical insurance policy issued by CSU and concluded that, although the insured did not execute a written contract with the subcontractor, the exclusionary provision did not preclude coverage. Cincinnati Specialty Underwriters Insurance Company, 2019 WL 6699818 at *1-4. The court concluded that the negligence claims against the insured did not arise out of the subcontractor's work, but, rather, arose out of the insured's independent acts; i.e., removing and reinstalling the same cabinets that the subcontractor installed and which caused the claimant's injuries. Id. at *4. This case is distinguishable, however, because Best Way itself did not perform any work on the staircase after the subcontractor completed the project. In any event, the court applied Texas law, not New Hampshire law, in construing the language "arising out of" in the policy. Id. at *2-4.

Finally, Blodgett argues that CSU suffered no prejudice as a result of Best Way's failure to comply with the exclusionary provision and thus CSU is obligated to defend and indemnify Best Way with respect to his negligence claims. Blodgett points to the fact that the exclusionary provision only required subcontractors to maintain insurance coverage for two years following completion of the project. Therefore, in his view, even if Best Way had obtained a written contract from the subcontractor, any coverage afforded by the subcontractor would have expired by the time Blodgett sustained his injuries.

We have held that, under certain circumstances, an insurer cannot deny coverage based upon the insured's failure to provide timely notice of the claim unless the insurer demonstrates that the late notice was prejudicial. See, e.g., Bianco Prof. Assoc., 144 N.H. at 295 ("Generally, if an insured gives late notice, the insurer must show prejudice to deny coverage."). However, notice is not at issue in this case, and Blodgett has not identified any cases in which we have applied this rule outside of the notice context. See Krigsman v. Progressive N. Ins. Co., 151 N.H. 643, 647-49 (2005) (holding that insurer was not required to prove that it was prejudiced by insured's failure to comply with a requirement that insured submit to examination under oath); see also Int'l Surplus Lines

---

[2] At oral argument, Blodgett argued that this interpretation is impractical and renders the CSU policy illusory. Because Blodgett fails to develop or identify any factual or legal support for this argument in his brief, we decline to address it. See State v. Blackmer, 149 N.H. 47, 49 (2003) ("[W]e confine our review to only those issues that the defendant has fully briefed.").

Ins. Co. v. Mfgs. & Merchants Mut. Ins. Co., 140 N.H. 15, 22 (1995) (holding that insurer was not required to show prejudice in order to deny coverage pursuant to exclusionary provision that "contain[ed] no notice requirement"). Accordingly, we conclude that CSU was not required to show that Best Way's failure to execute a written contract was prejudicial.[3]

### IV. Conclusion

For the foregoing reasons, we affirm the trial court's order granting summary judgment in favor of CSU. Any issues that Blodgett raised in his notice of appeal, but did not brief, are deemed waived. State v. Bazinet, 170 N.H. 680, 688 (2018).

Affirmed.

MACDONALD, C.J., and HICKS, BASSETT, and HANTZ MARCONI, JJ., concurred.

---

[3] We note that, even if prejudice were an issue, the exclusionary provisions included hold harmless, indemnity and defense obligations that CSU could have relied upon, notwithstanding the lack of insurance coverage.